IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

MICHAEL ROGALA,

           Plaintiff,

         v.

HARTFORD LIFE AND ACCIDENT
INSURANCE COMPANY,

           Defendant.

Case No. 3:20-cv-01556-JR

OPINION & ORDER

RUSSO, Magistrate Judge:

The Employee Retirement Income Security Act ("ERISA") provides that an ERISA plan participant may bring a civil action in federal court "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan[.]" 29 U.S.C. § 1132(a)(1)(B). Plaintiff Michael Rogala brings this action to challenge the decision made by defendant Hartford Life and Accident Insurance Company, denying him long-term disability benefits under the plan. As the Policyholder, Oracle America, Inc. ("Oracle") established the plan which plaintiff argues entitles him to benefits. Mr. Rogala, who worked as the director of global business operations for Oracle, argues that he was disabled under the Plan for symptoms of Severe Major Depressive Disorder starting on May 8, 2017. Defendant counters that Mr. Rogala does not qualify as an active employee during the relevant period, and that the medical evidence does not support his eligibility for long term disability (LTD) benefits. For the reasons described below, the Court finds that Mr. Rogala is not

Page 1 – OPINION & ORDER

entitled to long term disability benefits under the Plan, and therefore defendant's motion is granted.[1]

## DISCUSSION

Under Fed.R.Civ.P. 52, the Court recites at length its findings of fact and conclusions of law. But this case can be boiled down to two key questions: (1) Was plaintiff an "active" employee at Oracle before his termination such that he qualified for Plan benefits? And (2), assuming plaintiff did qualify, did he establish that his disability lasted throughout the 90-day elimination period and two-year mental illness limitation? Because the answer to both questions is "no," the Court finds the plaintiff is not entitled to the benefits at the heart of this case, grants defendant's motion, and enters judgment for defendant.

## FINDINGS OF FACT

**A.      The LTD Plan Issued to Oracle America, Inc.**

1.      Hartford Life issued Group Policy No. GLT-395175 (the "Policy") to Oracle America, Inc. ("Oracle"), the former employer of plaintiff Michael Rogala ("Plaintiff"). Oracle, as the Policyholder, established the Group Long Term Disability Plan for Employees of Oracle America, Inc. (the "LTD Plan"). AR 280-318.[2]

2.      The LTD Plan pays benefits to otherwise eligible participants who become "Disabled" while they are insured under the LTD Plan, and who remain Disabled throughout and

---

[1] The parties style their motions differently: one for "summary judgment" on the administrative record, another for "trial" on the administrative record. Despite this difference, the parties both seek relief under Rule 52, and agree that the Court's standard of review on the plan administrator's decision is de novo. Following Fed.R.Civ.P. 52(a), the Court issues these findings and conclusions.

[2] Plaintiff generally cited the administrative record as "AETROG", while Hartford cited "HARTROG." To avoid confusion the Court will refer to the administrative record simply as "AR."

beyond the 90-day Elimination Period. AR 287; see also AR 285 (the Elimination Period is the "first 90 day(s) of any one period of Disability"). *Id.*

3. A claimant must first prove that he is an eligible participant on the date of his alleged Disability. Under the LTD Plan, "Eligible Class(es)" include "All Active Full-time and Part-time Employees" who meet the other criteria of the LTD Plan. AR 284. An "Active Full-time or Part-time Employee" is further defined as "an employee who works for the Employer on a regular basis in the usual course of the Employer's business. The employee must work the number of hours in the Employer's normal work week." AR 298. In other words, a claimant is not an "Active" employee if he is not performing actual work on his regularly scheduled workdays.

4. The Plan specifies that a participant's coverage terminates, meaning that he is no longer insured under the LTD Plan when he no longer is an Active Employee, defined as, among other things, an employee on a "leave of absence." AR 294.

5. Coverage may still be continued during a "leave of absence" if the absence is (1) authorized, and (2) documented in writing – for example, when an employee is on a pre-approved vacation or other pre-approved leave of absence. *See* AR 294-95.

6. To receive coverage under the LTD Plan, once a claimant has proven that he is an eligible participant, the claimant must also prove that he is "Disabled," defined as "unable to perform with reasonable continuity the Essential Duties necessary to pursue Your occupation in the usual or customary way" during the Elimination Period and for the next 24 month(s). AR 301.

7. The LTD Plan further defines "Your occupation" as:

> any employment, business, trade or profession and the substantial and material acts of the occupation You were regularly performing for Your employer when the disability began. Your Occupation is not necessarily limited to the specific job You performed for Your employer.

Page 3 – OPINION & ORDER

AR 298. In other words, a claimant must prove not just that he suffered from some Disability, but also that his Disability prevented him from performing his own occupation as it existed in the general economy. *Id.*

8. The LTD Plan also requires a claimant to show he is under the "Regular Care of a Physician" to qualify for benefits. AR 287, 293. "Regular Care of a Physician" means "you are attended by a Physician" whose treatment is "consistent with the diagnosis of the disabling condition" and "administered as often as needed." AR 301.

9. The LTD Plan also includes a Mental Illness and Substance Abuse Benefits Limitation, which limits LTD benefits due to "Mental Illness" to a maximum of twenty-four months. AR 287, 299.

10. The parties agree that plaintiff's alleged Disability is a "Mental Illness" and that his claim for LTD benefits is limited to twenty-four months under the LTD Plan. Complaint, ¶¶ 6.1, 6.15.

**B.   Plaintiff Was Not Disabled, Was Not Actively Working, or Under the Regular Care of a Physician from April 11 to May 7, 2017**.

1. Plaintiff was employed by Oracle in California as the Director of Enterprise Operations. AR 1800.

2. On April 10, 2017, plaintiff was arrested and taken to jail. He remained in jail from April 10 to May 7, 2017. AR 982-983, 1117-18.

3. Plaintiff alleges he was Disabled under the LTD Plan beginning May 8, 2017. AR 1799; Complaint, ¶ 6.1.

4. Plaintiff was not an "Active Employee" or "Actively at Work during the period of his incarceration from April 11 to May 7, 2017. On May 18, 2017, Oracle terminated plaintiff's

Page 4 – OPINION & ORDER

employment. AR 1800. Plaintiff was terminated for "job abandonment" as he was "unable to be at work" while he was in jail. AR 982-87, 1117-18.

5. The administrative record contains no records of any contemporaneous treatment by any physicians or other health care providers during plaintiff's period of incarceration.

**C.  Plaintiff Applies for CAVDI Benefits and Tells Hartford Life that He was on "Vacation" During His Period of Incarceration**.

1. On June 1, 2017, plaintiff applied for CAVDI benefits administered by Hartford Life under a separate plan and stated that his alleged disability began on May 8, 2017. AR 1798-1800.

2. When Hartford Life asked plaintiff about the gap between his last day worked, April 10, 2017, and his alleged Date of Disability, May 8, 2017, plaintiff represented that he was on "vacation" from April 11 to May 7, 2017. AR 1798-1800.

3. Plaintiff was ultimately approved for CAVDI benefits with a disability date of May 8, 2017, and benefits were paid through May 13, 2018. *Id.;* AR 1805. Plaintiff did not apply for CAVDI benefits for the period of incarceration. *Id.*

**D.  Plaintiff Moves to Oregon and Applies for LTD Benefits.**

1. Sometime in August 2017, plaintiff moved from California to Oregon. AR 693, 1290.

2. On September 22, 2017, Hartford Life told plaintiff that he might be eligible for LTD benefits on top of the CAVDI benefits he was already receiving and sent plaintiff an LTD Income Benefits Questionnaire to complete and return. AR 144-45.

3. On June 5, 2018, plaintiff submitted one page of the LTD Income Benefits Questionnaire, starting the LTD benefits claims handling process. AR 140-42, 1773.

Page 5 – OPINION & ORDER

**E. During the Administrative Process, Hartford Life Learns that Plaintiff Was Not on an Approved "Vacation" During His Period of Incarceration.**

1. During the administration of the CAVDI benefits claim, plaintiff told Hartford Life that he was on "vacation" from April 11 to May 7, 2017. AR 1798-1800.

2. On October 31, 2019, Hartford Life reached out to Oracle to confirm whether plaintiff was "on approved PTO, vacation or sick time for the period of 04/11/2017 through 05/07/2017?" AR 597.

3. In response, plaintiff's supervisor, Paul Donnelly, provided Hartford Life with the following email he sent to plaintiff on April 12, 2017, plaintiff's second day absent from work while he was in jail:

> I have some extremely important information to share with you. I don't see anything in calendar for vacation or any ooo [out of office] set. I have pinged you in IM [instant message] over 2.5 hours ago. I have called your mobile but it is diverting to VM [voicemail] immediately. I have asked your staff where you are, no one seems to be able to get hold of you, but they have left voicemail.
> I have stayed up until 22:30 UK time to deliver this information.
> I do hope everything is ok. If you are out sick, please lets make sure you let your team and I know that is the case.
> I need 20 mins of your time urgently tomorrow, if you are available at 08:00 PT, we can talk then.

AR 592.

4. Plaintiff responded on May 9, 2017, when he emailed the following to Mr. Donnelly: "Paul, can you please call me at (510) 538-2526 as soon as you can? If it's busy please keep trying. I'm at it for a limited time." AR 589.

5. Mr. Donnelly also confirmed that he "was not expecting him [plaintiff] on holiday and nothing was booked." AR 596-97.

**F.     Plaintiff Became Self-Employed as an IT Consultant After Moving to Oregon.**

1.     During litigation, Hartford Life learned that plaintiff became self-employed as an IT consultant shortly after his move to Oregon in August 2017. HARTSUPP 1-11.6

2.     In a deposition taken in another matter on May 9, 2019, plaintiff testified that he had been self-employed from approximately August 2017 to at least May 9, 2019. *See* HARTSUPP 10.

**G.     Plaintiff Failed to Provide Sufficient Proof of Continued Disability or the Regular Care of a Physician Throughout and Beyond the 90-Day Elimination Period.**

1.     Using a Disability Date of May 8, 2017, the 90-day Elimination Period under the LTD Plan would run through August 5, 2017. AR 285.

2.     The two-year mental health limitation would therefore run from August 6, 2017, to August 5, 2019.

3.     The administrative record does not support plaintiff's Disability from May 8 to May 22, 2017, or during the 90-day Elimination Period. There are no contemporaneous records of plaintiff's treatment with any mental health providers until the intake interview with M.F.T. Janos Joseph Zanyi on May 22, 2017. AR 982-87. And none of plaintiff's treating providers have opined that plaintiff was disabled before May 24, 2017. *See, e.g.*, AR 321, 1819-20.

4.     M.F.T. Zanyi diagnosed plaintiff with Major Depressive Disorder, Single Episode, Severe, and Anxiety, and approved plaintiff for an Intensive Outpatient Program ("IOP"), starting on May 24, 2017. AR 982-87. In the IOP, plaintiff started treating with Dr. Alexander Nguyen Ali Malekzadeh. AR 1819-20.

5.      On June 8, 2017, plaintiff was approved for a higher level of care at a Partial Hospitalization Program ("PHP"). AR 1084-85. Plaintiff was admitted to the PHP on June 14, 2017 and left the program on or about June 30, 2017. AR 1820.

6.      The administrative record also lacks support for continued Disability from June 28 to July 10, 2017, still within the 90-day Elimination Period window. On June 28, 2017, just as he was leaving the PHP, plaintiff started treating with Dr. Lucas Christopher Van Dyke (Psychiatry). AR 1117-21. Dr. Van Dyke conducted a Mental Status Examination on plaintiff which was largely normal. Plaintiff had a guarded demeanor and self-reported "depression and anxiety." AR 1119. Yet Dr. Van Dyke also observed that plaintiff had no suicidal ideation, had normal activity, normal speech, a linear thought process, non-psychotic thought content, normal attention, full orientation, intact memory, and good impulse control, insight, and judgment. *Id.* Dr. Van Dyke prescribed nortriptyline and Seroquel and scheduled a follow up appointment in four weeks. AR 1120. Dr. Van Dyke's record does not support plaintiff's continued disability upon leaving the PHP on or after June 28, 2017.

7.      Plaintiff reentered the IOP and started treating again with Dr. Malekzadeh on July 10, 2017. AR 1819-20. Dr. Malekzadeh's APS indicated a recent change in plaintiff's condition, as he was now described as disheveled with impaired attention and concentration. *Id.* Dr. Malekzadeh explained that plaintiff was "starting to decompensate again" with intermittent "suicidal ideation." *Id.*

8.      On July 14, 2017, plaintiff similarly reported to M.F.T. Zanyi that his symptoms of depression and anxiety had been worsening, but his Mental Status Examination was largely normal, noting only a dysphoric and anxious mood. AR 1190-91.

Page 8 – OPINION & ORDER

9.  By July 27, 2017 Zanyi noted that plaintiff's symptoms were improving and discharged him from the IOP program. AR 1235-36.

10. From July 28 to November 27, 2017, plaintiff continued treating with his California providers, mainly M.F.T. Zanyi and Dr. Van Dyke (sometimes via telephone following his move to Oregon). *See, e.g.*, AR 693, 697-98, 707-08, 713-14, 718-19, 1217-18, 1270-71, 1283- 84, 1812-1813.

11. The administrative record also fails to support plaintiff's continued disability from November 27, 2017, to February 17, 2018, just months after the start of the two-year mental health limitation period. On November 27, 2017, after moving to Oregon (and after starting his period of self-employment), plaintiff reported to Dr. Van Dyke that he had joined a gym, updated his resume, was attending classes, and was "looking for work." AR 718-19. Dr. Van Dyke also noted that plaintiff was "non-pressured but sounds anxious, linear and no evidence of psychosis, no SI, I[nsight]/J[udgment] good." *Id.* Dr. Van Dyke advised that plaintiff should follow up in six weeks. *Id.*

12. Plaintiff did not have another mental health visit with any provider until January 8, 2018, when he had another telephone visit with Dr. Van Dyke. AR 728-29. Dr. Van Dyke provided medication management and told him to follow up in six weeks on February 16, 2018. *Id.*

13. Plaintiff's next treatment note was another phone call visit with Dr. Van Dyke on February 16, 2018. AR 733. The next day, he started treatment with a new therapist, Teresa Naimo, LPC, in Oregon. AR 737-38. These three records from Dr. Van Dyke over a twelve-week period conflict with the level of treatment that would be expected for a claimant who is psychiatrically impaired and therefore unable to work.

14.     Plaintiff's treating providers failed to opine that plaintiff was continuously Disabled throughout and beyond the 90-day Elimination Period. Again, Dr. Malekzadeh specifically limited his opinions about plaintiff's Disability to the brief periods of his treatment starting May 24, 2017 and ending July 27, 2017. AR 321, 1819-20. Dr. Malekzadeh's opinion does not, therefore support plaintiff's continued disability during and beyond the 90-day Elimination Period.

15.     On appeal, plaintiff also provided a statement from Dr. Van Dyke, dated March 27, 2020. AR 500. Dr. Van Dyke similarly opined that plaintiff was, in his medical opinion, psychiatrically impaired from the start of his treatment in June 2017, through the end of his treatment in February 2018. *Id.* Dr. Van Dyke did not opine that plaintiff was disabled before Dr. Van Dyke's treatment on June 28, 2017. *Id.*

17.     Although plaintiff treated with several other providers, only two other providers opined as to plaintiff's ability to work at any time during or beyond the 90-day Elimination Period. Plaintiff began treating with Dr. William Chen (Psychiatry) on September 12, 2018. AR 825-32. Plaintiff began treating with Dr. Christopher Camplair (Psychotherapist) on January 18, 2019. AR 949-50. Neither Dr. Chen nor Dr. Camplair supported plaintiff's alleged Disability before they started treating plaintiff. *See e.g.,* AR 319, 913, 971, 1436-38.

18.     In sum, there is insufficient evidence that plaintiff was Disabled for the periods from, at least: May 8 to May 22, 2017; June 28 to July 10, 2017; and November 27, 2017 to February 16, 2018. *Id.*

**H.    Hartford Life Denies Plaintiff's Claim for LTD Benefits.**

1.     On October 9, 2019, Hartford Life, through an independent, third-party vendor, obtained a Psychiatric Peer Review by Dr. Fariha Qadir, Board Certified in Psychiatry. AR 612-22. After reviewing plaintiff's medical records, including those discussed above, Dr. Qadir

Page 10 – OPINION & ORDER

specifically found that the records did not support any functional impairment until May 18, 2017 (the date of the first contemporaneous record provided by plaintiff, even though this record did not provide evidence of any actual treatment of plaintiff). AR 620. Dr. Qadir also found plaintiff no longer disabled after November 27, 2017, when plaintiff reported to Dr. Van Dyke that he was feeling better, taking online classes, and looking for a new job. *Id*. Dr. Qadir's opinion, which is supported by corroborating medical records, is persuasive.

2. On November 4, 2019, after learning that plaintiff was not on an approved and documented "vacation" or any other approved and documented leave of absence from April 11 to May 7, 2017, Hartford Life denied plaintiff's LTD claim, finding that (1) plaintiff was not eligible for coverage under the LTD Plan when he filed his claim, and (2) plaintiff's alleged Disability was not supported from his alleged Date of Disability on May 8 through May 17, 2017 (or from November 28, 2017 onward). AR 93-99.

### I. Plaintiff Appeals and Hartford Life Upholds its Decision.

1. On March 27, 2020, plaintiff, through counsel, appealed Hartford Life's benefit decision and provided additional records in support of his claim. AR 227-63.

2. On April 24, 2020, Hartford Life, through an independent, third-party vendor, obtained a Psychiatric Peer Review by Dr. Greer Richardson, Board Certified in Psychiatry. AR 201-16. After reviewing plaintiff's medical records, including the additional records provided by plaintiff on appeal, Dr. Richardson found that plaintiff had "full work restriction due to uncontrolled symptoms, IOP and PHP" from May 8 to June 27, 2017. AR 211. Dr. Richardson further found "no restrictions or limitations" from June 28 to July 10, 2017. *Id.* After June 10, Dr. Richardson found plaintiff to have either only part-time or no restrictions and limitations during various dates. AR 201.

Page 11 – OPINION & ORDER

3.      Dr. Richardson also found that plaintiff was no longer disabled during the 90-day Elimination Period from June 28 to July 10, 2017. AR 211. This portion of Dr. Richardson's opinion, which is supported by corroborating medical records, is persuasive.

4.      On June 3, 2020, Hartford Life upheld its benefits decision on appeal. AR 73-79.

## CONCLUSIONS OF LAW

**A.      De Novo Review of Hartford Life's ERISA Benefits Decision.**

1.      The LTD Plan at issue in this matter is governed by the Employee Retirement Income Security Act, 29 U.S.C. §§ 1001, et seq. ("ERISA").

2.      The parties agree that this matter is governed by the de novo standard of review under ERISA.

3.      Where the standard of review is de novo, a Rule 52 motion is the appropriate mechanism for resolving the dispute. *Rabbat v. Standard Ins. Co.*, 894 F. Supp. 2d 1311, 1314 (D. Or. 2012).

4.      Under a de novo standard of review, the claimant retains the burden of proving his entitlement to benefits under the LTD Plan. *Muniz v. Amec Constr. Mgmt., Inc.*, 623 F.3d 1290, 1294-95 (9th Cir. 2010). The claim administrator's structural conflict of interest is irrelevant. *Id.* at 1295.

5.      Because the burden to prove entitlement to policy benefits rests on the claimant, the Court must examine whether plaintiff has established, by a preponderance of the evidence, that the record shows that he is entitled to benefits under the policy. *Id.* at 1294, 1296.

6.      The LTD Plan specifically requires that plaintiff prove that: (1) he was a covered employee and eligible for benefits under the LTD Plan on his alleged Date of Disability of May 8,

2017; and (2) he remained Disabled throughout and beyond the 90-day Elimination Period. AR 280-318.

7.    When a court reviews a benefits decision de novo, it should still limit its review to only those records before the administrator. *Kearney v. Standard Ins. Co.*, 175 F.3d 1084, 1090 (9th Cir. 1999). Only when circumstances establish that it is necessary to consider additional evidence for an adequate review will the court do so. *Id.*

8.    This Court previously ordered, in response to Hartford Life's Motion to Supplement the Administrative Record, that "the circumstances of this case clearly establish that additional evidence is necessary to conduct an adequate de novo review of the benefit decision." *See* ECF 29. As a result, the Court has already accepted and considered the following supplemental records provided by Hartford Life and plaintiff:

> (i) excerpts from Plaintiff's sworn deposition testimony in a separate civil matter (HARTSUPP 1- 11); and (ii) excerpts from Plaintiff's 2017-2019 tax returns (ROGSUPP 1-20).

9.    Accordingly, the Court will decide this matter on the original administrative record (ECF 22) with the accepted supplements (ECF 30, 31).

**B.    Plaintiff Has Not Met His Burden of Proving that He Was a Covered Employee and Eligible for LTD Benefits.**

1.    To be eligible for benefits under the LTD Plan, plaintiff must prove that, on his alleged Date of Disability of May 8, 2017, he was either: (i) actively employed; or (ii) on an approved and documented leave of absence. AR 285, 286, 294-95.

2.    Plaintiff has not proven that he was an "active" employee on his alleged Date of Disability of May 8, 2017. Plaintiff was incarcerated from April 11 to May 7, 2017. The record shows plaintiff was terminated from Oracle, effective May 18, 2017, for "job abandonment"

Page 13 – OPINION & ORDER

because he was "unable to be at work" while he was in jail. AR 982-87, 1117-18. And, crucially, plaintiff has not pointed to any evidence that shows he returned to "active" work in any capacity between the time he was released from jail and the date of his termination. On the contrary, plaintiff's supervisor confirmed that he was not performing any of his regular duties on any of his regularly scheduled workdays between April 11, 2017, and his termination. AR 589, 592, 596-97. He was not, therefore, an "active" employee on May 8, 2017 (or at any time between his arrest and his termination).

       3.      Plaintiff has also not proven that he was on an approved and documented "vacation" or any other approved and documented leave of absence at any time between his arrest and the termination of his employment. AR 589, 592, 596-97. The emails from plaintiff's supervisor confirm that he had no contact with plaintiff from April 11 to May 9, 2017, and that plaintiff was not on a scheduled vacation nor did he have any approved and documented leave during this period. *Id.*

       4.      Since plaintiff has not proven either that he was actively at work, or that he was on an approved and documented vacation or any other approved and documented leave of absence between his arrest and the termination of his employment, plaintiff's coverage under the LTD Plan terminated on April 11, 2017, and he was not eligible for benefits under the terms of the LTD Plan on his alleged Date of Disability of May 8, 2017.

       5.      Although plaintiff contends Hartford's internal administrative records show that any gap between his last day worked on April 11, 2017, and his date of disability on May 8, 2017 was attributable to vacation days, Hartford was relying on plaintiff's misrepresentation that he was "on vacation," when it created the administrative record. *Id*. at 69 (noting: "GAP in LDW/DOD is vacation days per STD intake"). Plaintiff's attempt to parse a letter Hartford sent him on September

Page 14 – OPINION & ORDER

22, 2017, which stated that he "may be eligible for benefits under that Policy," *Id.* at 144, is also unpersuasive because, again, Hartford was acting under the mistaken impression plaintiff was on vacation, rather than incarcerated. Since Hartford did not learn about the nature of plaintiff's absence until "late 2019, during the administration of plaintiff's LTD benefits claim," ECF 51 at 7, Hartford's 2017 representations about plaintiff's eligibility or employment status on those dates are irrelevant.

6.  Since plaintiff was not a covered employee and was not eligible for benefits under the LTD Plan on his alleged Date of Disability, the Court finds in favor of Hartford Life on plaintiff's claims on this basis.

**C.  Plaintiff Has Not Met His Burden of Proving that He Was Disabled Throughout and Beyond the 90-Day Elimination Period.**

1.  Although the Court need not reach this issue, since plaintiff has not proven he was eligible for benefits, the Court also finds that plaintiff failed to prove that he was Disabled throughout and beyond the 90-day Elimination Period.

2.  Plaintiff must prove not only that he had a medical diagnosis, but also that his medical conditions made him continuously unable to perform his job duties. *Jordan v. Northrop Grumman Corp. Welfare Benefit Plan*, 370 F.3d 869, 880 (9th Cir. 2004), overruled on other grounds by *Abatie v. Alta Health & Life Ins. Co.*, 458 F.3d 955 (9th Cir. 2006).

3.  Plaintiff cannot meet his burden by providing subjective or conclusory opinions about his work functionality during the 90-day Elimination Period. *See, e.g.*, *Inciong v. Fort Dearborn Life Ins. Co.*, 570 Fed. Appx. 724, 725 (9th Cir. 2014) (affirming denial of benefits because the plaintiff "had failed to provide sufficient objective and quantifiable evidence to support his claim of total disability").

Page 15 – OPINION & ORDER

4.	In assessing a claimant's subjective evidence, courts should not blindly accept after-the-fact conclusory opinions contrary to the objective medical evidence in the record. *Jordan*, 370 F.3d at 880.

5.	Plaintiff has failed to provide sufficient evidence that his mental health conditions made him continuously incapable of performing his job duties for Oracle from his alleged Date of Disability on May 8, 2017, throughout the 90-day Elimination Period, and beyond. Further, plaintiff's subjective self-reports of his own work functionality lack credibility and are not corroborated by the objective medical evidence in the record. Plaintiff has not, therefore, met his burden of proving his continuous disability. *See Munn v. Hertz Long-Term Disability Plan*, 477 Fed. Appx. 438, 438-39 (9th Cir. 2012) (affirming judgment for the Plan where the plaintiff "lacked a continuous period of disability" during the Plan's elimination period).

6.	On May 9, 2019, plaintiff testified under oath that he was "self-employed" as an IT Consultant and that he had been so employed since he moved to Oregon (in approximately August 2017). HARTSUPP 10. The fact that plaintiff was self-employed at or around the end of the 90-day Elimination Period in August 2017 is strong evidence that plaintiff was, at a minimum, no longer Disabled at the end of the 90-day Elimination Period. *Id*.

7.	Plaintiff has failed to prove that he was Disabled throughout the 90-day Elimination Period. Again, the administrative record contains no records of any mental health treatment by any providers until May 22, 2017, and no opinions by any treating providers supporting plaintiff's alleged Disability before May 24, 2017. Plaintiff's subjective and self-serving claim that he was Disabled at the start of the 90-day Elimination Period on May 8, 2017 is not supported by any corroborating medical evidence, and plaintiff can point to none in the record. Plaintiff has therefore failed to meet his burden of proving that he was disabled throughout the 90-day Elimination Period.

Page 16 – OPINION & ORDER

8. The administrative record also fails to support plaintiff's claim that he was continuously disabled throughout the rest of the 90-day Elimination Period, which ended on August 5, 2017. In particular, the records of Dr. Van Dyke do not support plaintiff's continued disability for the period from June 28, 2017 to July 10, 2017. AR 1117-21.

9. Plaintiff has also failed to provide sufficient proof that he remained continuously Disabled beyond the end of the 90-day Elimination Period and during the mental health limitation period from August 6, 2017 to August 5, 2019. To begin with, plaintiff testified under oath that he became self-employed after he moved to Oregon in August 2017. HARTSUPP 10. That testimony alone suggests plaintiff was not Disabled after August 5, 2017.

10. Plaintiff's medical records from Dr. Van Dyke also show a significant improvement in his mental health conditions between November 27, 2017 and February 16, 2018. AR 718-19, 728-29, 733. Even if plaintiff had proven that he was eligible for benefits, and that he was continuously disabled throughout the 90-day Elimination Period, plaintiff's entitlement to benefits would have ended no later than November 26, 2017.

### D. Judgment for Hartford Life.

1. Accordingly, the Court upholds Hartford Life's decision to deny LTD benefits to plaintiff because plaintiff failed to meet his burden of proving that he was eligible for benefits under the LTD Plan on his alleged Date of Disability of May 8, 2017, because he was no longer actively employed and was not on an approved and documented vacation or other leave of absence after April 11, 2017.

2. Although the Court does not need to reach any other issues to find in favor of Hartford Life, the Court also finds that, in the alternative, plaintiff failed to meet his burden of proving that he was continuously Disabled throughout the 90-day Elimination Period and beyond.

3.  The Court therefore finds for the defendant Hartford Life, and judgment will be entered in defendant's favor.

## CONCLUSION

For these reasons, defendant's motion for judgment under Rule 52 (ECF 32) is granted, plaintiff's motion for judgment under Rule 52 (ECF 33) is denied, and plaintiff's motions to supplement the administrative record (ECF 35, 45) are denied as moot.[3] Judgment shall be entered in favor of defendant.

DATED this 25th day of October, 2021.

/s/ Jolie A. Russo
Jolie A. Russo
United States Magistrate Judge

---

[3] The Court denies these motions as moot because, notwithstanding their relevance to plaintiff's disability between May 8 and May 17, 2017, these records do nothing to show plaintiff was an "active" employee at the time he claims disability benefits. Because plaintiff's proposed additions to the administrative record cannot make up for this shortfall, they are not "*necessary* to conduct an adequate de novo review of the benefit decision," *Opeta v. Northwest Airlines Pension Plan*, 484 F.3d 1211, 1217 (9th Cir. 2007) (emphasis in original), so the Court will not include them it its review.